## TERRE HAUTE ELECTRIC COMPANY v. KIELEY, ADMINISTRATRIX.

[No. 4,871. Filed December 15, 1904. Rehearing denied March 30, 1905.]

1. PLEADING.—*Complaint.*—*Master and Servant.*—*Defects.*—*Promise to Repair.*—A complaint which discloses the relationship of master and servant and alleges a promise to repair unnecessarily hazardous defective appliances, followed by an injury caused by such defective appliances, states a *prima facie* case. p. 182.

2. SAME.—*Complaint.*—*Defective Appliances.*—An allegation that the air-brakes were defective and out of repair, as against a demurrer, shows a breach of duty by an interurban railroad company to its motorman. p. 183.

3. APPEAL AND ERROR.—*Evidence.*—*Conflict.*—Where the evidence is in conflict the verdict is conclusive on appeal. p. 185.

4. TRIAL.—*Negligence.*—*Proximate Cause.*—*Question for the Jury.*—Whether the defect alleged was the proximate cause of the alleged injury is primarily a question for the jury. p. 185.

5. NEGLIGENCE.—*Proximate Cause.*—*Break in Line of Causation.*—Where by reason of a defective air-brake an interurban car ran swiftly and uncontrolled down a grade and in making a short turn broke a flange of a wheel, thereby derailing such car and killing the

motorman, the defective brake is the proximate cause of such death. p. 185.

6. NEGLIGENCE.—*Self-preservation.*—*Presumption.* — The presumption is that the instinct of self-preservation is possessed and exercised. p. 186.

7. TRIAL.—*Instructions.*—*Master and Servant.*—*Defective Appliances.* —*Safe Place.*—Where the cause alleged is injury on account of a defective appliance—a defective air-brake—an instruction that it was the master's duty to use reasonable care to provide a "safe place and safe appliances" is not misleading nor harmful. p. 186.

8. SAME.—*Instructions.*—*Burden of Proof.*—Where the first instruction correctly states that the burden of proof is upon the plaintiff to establish the material allegations of her complaint, it is not necessary to repeat the statement of such burden in the following instructions. p. 187.

9. SAME.—*Instructions.*—*Undisputed Facts.*—*Duty of Court.*—An instruction that notice to a foreman of the car barns of an interurban railroad company is notice to the company, and a promise to repair by such foreman is a promise by the company, is not erroneous where such facts were not disputed. p. 187.

10. EVIDENCE.—*Negligence.*—*Defective Air-Brakes.*—*Prior Condition.* —In an action for damages caused by a defective air-brake, evidence that such brake had been out of repair three or four days prior to such injury is admissible, its weight being for the jury. p. 187.

11. TRIAL.—*Introduction of Testimony.*—*Admission by Opponent.*— The defendant, by admitting that decedent was killed in an interurban wreck, can not preclude the plaintiff from proving such fact by witnesses. p. 188.

From Vigo Circuit Court; *James E. Piety,* Judge.

Action by Anna M. Kieley as administratrix of the estate of Albert H. Kieley, deceased, against the Terre Haute Electric Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*McNutt & McNutt* and *Lamb & Beasley,* for appellant.
*John O. Piety, Samuel K. Duvall* and *James L. Price,* for appellee.

ROBY, J.—This action is brought for the benefit of the widow and next of kin of Albert H. Kieley, deceased, who is averred to have left a widow and two children, aged two and seven years, respectively, who were dependent upon him. The administratrix avers in her complaint that ap-

pellant was a corporation operating a system of electric street railways in the city of Terre Haute, and also an electric interurban railway between said city and the town of Brazil; that among the cars used by appellant was one for the removal of cinders from its power-house, which was known as car "No. 15"; that its cars, including No. 15, were equipped with air-brakes, which, by reason of the many steep grades and hills traversed, were necessary to the safe operation of said cars on said line; that decedent was on December 29, 1901, and long prior thereto had been, in appellant's employ as a motorman, and on December 27 had been placed on said cinder car in said capacity; that the air-brakes thereon had become and were defective and out of repair, and that condition increased the danger and hazard to the motorman while going down steep grades; that decedent ran said car into appellant's barns on said day, and notified it that the brakes were out of repair, whereupon it promised to repair and replace the defective parts; that, relying upon said promise, and in accordance with its orders, decedent continued to work on said car on the 29th, and that about 11 o'clock a. m., when descending one of said steep grades, it became unmanageable because of said defective air-brakes, and jumped the track, striking a bridge and throwing decedent to the ground and inflicting injuries from which he died the same day; that "decedent's said injuries were occasioned and brought about wholly by said defects in said brakes and negligence of the defendant as aforesaid." Wherefore, etc.

1. The demurrer to this pleading for want of facts was overruled, and an exception reserved. The objections urged against it are that the defective condition of the brake is not shown to have made the car unsafe; that the character of the defects is not described; and that no direct allegation is made that appellant negligently performed or omitted any duty owing to decedent. The relation of master and servant is disclosed. The existence of a

defective appliance rendering the servant's work unnecessarily hazardous was a breach of the duty owing by the master. A promise to repair, and an injury caused by the defective appliance, made a *prima facie* case. *McFarlan Carriage Co.* v. *Potter* (1899), 153 Ind. 107.

2. The character of the appliance is stated; its purpose is a matter of common knowledge. An allegation that it was defective and out of repair was, as against a demurrer, sufficient to show a breach of duty.

An answer in general denial was filed. Trial by jury, verdict for $2,500, motion for a new trial overruled, and judgment on the verdict.

The evidence, taking that most favorable to appellee where there is conflict, shows that the decedent ran car No. 15 on Friday, December 27; that he reported the air-brakes as being defective, and that appellant promised to repair them. The brakes were defective in permitting the air to escape. Repairs were made, and decedent took the car out on Saturday, but found that the trouble had not been remedied. He thereupon ran the car back to the barn, and told the superintendent that the air-brakes were not any better. The latter replied that the fault must be in the compressor; "that he would have to use it the way it was, and he would put a new one in the next afternoon— a new air compressor." On the next morning decedent took the car out at about 7 o'clock, in obedience to orders. He took one load of cinders away and unloaded it; returned to Terre Haute, loaded another load, and started east with it, reaching the hill at which the accident occurred at about 11 o'clock a. m. This hill was 1,140 feet long. The track descended to the east at a grade of from three to five degrees. It was straight for about half the distance down. Thereafter it curved south ninety feet, ran straight thirty feet, curved north one hundred feet, curved south, ending twenty feet above the bridge at which the accident occurred. As appears from the testimony of a number of witnesses,

the car started down this grade at the rate of four or five miles an hour. Its progress was described by the conductor, who was the only person except the decedent aboard, as follows: "Well, it kept going faster and faster all the way down, and we got down to probably sixty or seventy feet from the bridge, I noticed a jostling—sort of a jar— on the back end. The front end of the car was then off the track, but I didn't know what it was. I just supposed the rate of speed was shaking the car on the track. About the time we hit the bridge I realized the car was off the track, and the next thing I remember I was standing out where Kieley was, on the guard-rail on the bridge." The front wheels were off the rails. The car struck a trolley-pole, breaking it down, then struck the bridge with great force, inflicting injuries upon decedent resulting in his death. The car gradually "picked up speed" during the entire descent. From the first mark of the wheels found on the ties to the place where the last mark was made was 123 feet 9 inches. About one foot west of the first mark two pieces of iron, broken from the flange of the large car wheel on the north and front of the car, were found. They lay inside of the north rail. One of them was five or six inches long, the other somewhat smaller. The iron was spongy and defective, owing to an imperfect cast.

There were three appliances which could be used to check and control the speed of the car—the air-brakes, the hand-brakes, and reversing the power by the lever, thereby causing the wheels to move backwards. No witness testified, so far as we are advised, as to any use having been made by decedent, while descending the hill, of either the hand or the air-brakes. The power had been reversed, as shown by the position of the lever. It was fairly inferable from the evidence that decedent continued to use the defective car in reliance upon appellant's promise to repair it, and there is no room for doubt but that the superintendent

making the promise had full power to represent the company in that behalf.

The insufficiency of the evidence to sustain the verdict is urged upon the further grounds that it does not show that the air-brakes were necessary to the safe operation of the car, and that it affirmatively appears that such defective brakes were not the proximate cause of the injury.

3. There is testimony to the effect that by the use of the hand-brakes the speed of the car could be controlled and regulated. There is also testimony to the effect that the air-brakes, registered and carried a sufficient pressure to make them entirely effective. As to the latter proposition there was an undoubted conflict. The verdict is therefore conclusive. The same conditions apply to the former one. There was no direct testimony that air-brakes were necessary, but, in view of the fact that all of appellant's cars were thus equipped, in view of the unquestioned efficiency of such brakes, of the heavy grades over which this car was run, of its weight (twelve tons) and the weight of the load carried (ten tons), of the complicated and expensive character of the appliance, it is not difficult to infer that they were necessary.

4. Whether the defect complained of was the proximate cause of the injury was primarily a question for the jury. *Chicago, etc., R. Co.* v. *Martin* (1903), 31 Ind. App. 308.

5. The verdict therefore includes a finding in appellee's favor upon that issue. In determining whether such finding was legitimately made, it may be conceded that the wheels of the car would not have left the rails except for the breaking of the flange and the defect therein. The breaking of the flange was a cause contributing to the injury. If it were shown that the brakes became suddenly ineffective, whereby all control over the car was lost, and a race begun, ending at the bottom of the hill, a broken wheel and a defective casting would not be sufficient to show a

break in the line of causation. If it appeared that decedent used all the instrumentalities at his command to control the car, but was unable to do so because of the defect complained of, the case would not differ in principle from the illustration. There does not appear to have been any direct testimony as to what was done by decedent. The position of the reverse lever is conclusive as to the fact that he exerted himself to some extent.

6. The presumption is that the instinct of self-preservation is possessed and exercised. Lawson, Presumptive Ev., rule 39, illustrations 1-5, and authorities cited.

The wheel had been used for a considerable time. Except for the high rate at which the car was moving and by which the defective flange was brought in violent contact with the rail at the curve, it is at least inferable that it would not have broken. That the flange of a car wheel should break under such circumstances as existed upon this occasion, attributable to the failure of duty relied upon, is not an unnatural sequence; and if the jury believed that the rate at which the car was running when the derailment took place was due to the defective air-brakes, it might properly find such condition to have been the proximate cause of the injury.

7. In the fourth instruction given the jury were told that it was the appellant's duty to exercise reasonable care and diligence to provide and maintain a safe place and safe appliances for decedent to use in performing his duty under its employment. So far as appellant's duty is stated the instruction is unexceptionable. *Chicago, etc., R. Co. v. Tackett* (1904), 33 Ind. App. 379. While the breach of duty alleged related to appliances, the effect of a failure in that behalf was so nearly related to safety of the place where decedent was required to work as to make the reference in the instruction to the duty of furnishing a safe place neither misleading nor harmful.

8.   Instructions six, seven, eight and nine are criticised for failing to include the statement that the finding in plaintiff's favor upon various points therein enumerated required a preponderance of evidence.   It was clearly and correctly stated in the first instruction given that, "before the plaintiff can recover in this action, she must prove by a preponderance of all the evidence all the material allegations contained in her complaint."   One clear and definite statement of the law upon this point was sufficient.   Instructions are considered in their entirety and undue prominence should not be given to any one proposition. *Mullen* v. *Bower* (1899), 22 Ind. App. 294; *Deilks* v. *State* (1901), 26 Ind. App. 41, 55.

9.   In the seventh instruction it was stated that "notice of defects given to the foreman having charge of the car barns, where cars of the defendant were taken for repairs, *  *  *   and a promise to remedy such defects made by such foreman,  *  *  *  is in law a promise of the defendant."   It is said:  "While we do not question, for the purpose of this case, under the facts that notice to foreman Grosvenor of defects in the car was in contemplation of law notice to the defendant, yet we do insist that the other element of the instruction involving the promise of Grosvenor to repair is not warranted by the law or under the evidence.   In the first place the authority of the foreman of the car barns and his jurisdiction were matters of proof, and not of law, and hence the instruction on the last proposition is fatally defective for that reason."   The evidence is not conflicting as to the authority of Grosvenor in either respect indicated.   It is not error for the court to assume the existence of uncontroverted facts. *Hunt* v. *Conner* (1901), 26 Ind. App. 41, 55.

10.   Evidence was admitted over defendant's objection tending to show the air-brakes to have been out of repair before decedent worked on the car, which had been three

188    APPELLATE COURT OF INDIANA,

Smith v. Michigan Cent. R. Co.—35 Ind. App. 188.

or four days. The time was not so remote as to render the evidence inadmissible. Its weight was, of course, for the jury.

11. The physician who attended the decedent was allowed to testify relative to the character of his injuries and the resulting death. Appellant, pending the examination, offered to admit that the death was caused by the injuries received in the collision. This offer was followed by an objection to a question which was overruled. One may not thus limit his adversary's method of making proof.

There is no available error in the record. Judgment affirmed.