CARLSON v. SNELL.

[No. 18,512. Filed March 11, 1955. Rehearing denied April 15, 1955. Transfer denied June 15, 1955.]

*George F. Sammons,* of Kentland, and *Michael L. Fansler, Irving M. Fauvre, Howard S. Young, Jr.* and *David L. Chambers,* all of Indianapolis, for appellant.

*Edwin L. Robinson,* of Kentland, and *William S. Isham,* of Fowler, for appellee.

ROYSE, P. J.—Appellee brought this action for damages against appellant for personal injuries sustained while he was working as a farm hand for appellant. The acts of negligence charged in the complaint are as follows:

"(a) Failure of appellant to cause rear wheels of tractor to be spread to their maximum width, (b) Failure of appellant to put any fluid in tractor tires or to sufficiently weight them, (c) Failure of appellant to advise or warn appellee that rear tires did not contain any fluid or other sufficient weights or that wheels had not been spread to maximum width, (d) Failure of appellant to warn appellee of the dangerous and unsafe condition of tractor for the intended use and purpose."

Appellant filed answer in two paragraphs, the first of admission and denial pursuant to the rules of the Supreme Court; the second alleged appellee had assumed the risk of his particular employment. Trial to jury resulted in verdict for $8,000 in favor of appellees. Judgment accordingly. The error assigned here is the overruling of appellant's motion for a new trial. The specifications of that motion relied upon by appellant are as follows:

"1. The verdict of the jury is contrary to law.

2. The verdict of the jury is not sustained by sufficient evidence.

3. The court erred in overruling defendant's motion for a directed verdict for defendant made in writing at the close of plaintiff's evidence.

4. The court erred in overruling defendant's motion for a directed verdict for defendant, made in writing at the close of all of the evidence."

In the argument portion of his brief, appellant contends the evidence is insufficient to support the verdict and he, therefore, groups all of the foregoing specifications for the purpose of argument. This requires a consideration of the evidence and the reasonable inferences which may be drawn therefrom that are most favorable to appellee.

The record discloses appellant is a grain and live stock farmer. Appellee worked as a farm laborer for

appellant for about three years prior to April 17, 1952. Appellant owned a manual front-end loader. Appellee had used this many times without mishap on an H Model tractor owned by appellant. A short time before the last-mentioned date, appellant, in an exchange of work with his nephews, had borrowed an M tractor from his nephews and attached the front loader to it. When using such an outfit it is customary to have the rear tires filled with a fluid of calcium chloride and water (this fluid would add a weight of about 570 pounds to each tire). When engaged in the type of work appellee was performing, the rear wheels should be set out and extra weights should be added.

About ten days before the accident involved herein, appellee and appellant were using the M tractor and loader in moving some stumps and they experienced trouble in keeping the tractor on the ground and the traction of the rear wheels was not proper for the job. Appellee suggested to appellant that "there must not be too much fluid in there because it don't have near the traction the old 'H' has with the loader." Appellant agreed that it "didn't act too good." In the same conversation, appellee, while crossing a narrow bridge, suggested that the "wheels should be set out as otherwise it would be risky," to which appellant replied: "We won't be using the tractor much, as it belongs to the boys."

On April 17, 1952, at the direction of appellant, appellee was using this equipment in loading manure from a feed lot to spreaders for use in the fields. This feed lot was part concrete and part limestone. The concrete portion was about six inches higher than the limestone, and where the two joined there was an incline rather than a vertical drop. Prior to the accident the limestone portion had been cleared of six loads.

Appellee had driven the outfit up and down about fifteen times while loading the manure and had no trouble prior to the accident that day. About 4 P.M. he was backing out with a load—the area where the front wheels were located had been cleared but the area where the back wheels were had not. The front wheels were on the cement portion. The left rear wheel of the tractor was either on the slope or off on the limestone portion. The right rear wheel was on the cement portion and not over twelve inches higher than the left rear wheel. He was traveling at a speed of about one mile per hour and raising the load as he was moving backward. At this time he felt there was going to be an accident. Someone hollered "Look out—jump." He was hurled onto the feeding platform, seriously and permanently injured.

At the time of the accident there was no fluid in the tires. Appellee did not know this until after the accident. One of the owners of the tractor who was present at the time of the accident said: "If it was weighted it would not have turned over." As heretofore indicated, the rear wheels had not been fully extended. Appellee was at the time careful in the operation of the equipment. He said he knew the tractor was dangerous, but believed if he was careful he would have no trouble. He further said he used it on this occasion because he was working for the other fellow and that "I don't imagine a person has a job long if he starts to tell the other fellow what to do."

The parties hereto are in general agreement as to the principles of law which should govern the decision of this case. Their difference is in the application of these principles to the facts herein.

One of the leading cases on the question before us is *McFarlan Carriage Company* v. *Potter* (1899), 153

Ind. 107, 53 N. E. 465. In that case the employee had informed the employer of the dangerous condition and had been promised that the defect would be remedied when the job was completed. In rejecting the contention of appellant that the time as to when the repairs would be made was too indefinite and uncertain, the Supreme Court said:

". . . we must confine ourselves to a reasonable view, and presume both parties knew the time necessary, and that the promise was made and acted upon with special reference to the time required."

The Court, speaking through Judge Hadley, then said:

"There are certain underlying principles about which courts and lawyers are agreed. Among them are: (1) That in establishing the relation of employer and employe certain reciprocal duties are implied, namely: On the part of the employer that he will furnish to the employe reasonably safe instrumentalities and place with which and in which to work; and on the part of the employe that he will render suitable service, and obey the reasonable commands of his employer. (2) That the employe assumes all the known usual dangers incident to the place and instrumentalities with which he works. Whether these mutual obligations are contractual, or spring from public policy, is not well settled; but that each is held to a strict accountability with respect to these requirements is a rule of universal application. (3) Another familiar rule is that during the employment, if the instrumentalities used get out of repair, either from natural wear, displacement, or breakage, thereby increasing the danger, and the employe knows of the defect, or by the exercise of reasonable caution might have known it, and he goes on without complaint or notice to his employer, he will be held to have assumed the augmented peril.

. . .

"Upon the general rule of assumption of risk by an employe, who, with notice, continues in the

service, the courts have humanely and justly engrafted an exception that is now as well established as the rule itself. The exception arises when in the course of the employment the employe discovers that the machine or implement with which he is required to work has become defective, and more dangerous, and, upon his notice to the employer, the latter promises to make needed repairs.

. . .

"Another kindred rule promotive of safety to the employee requires the employer upon learning of any latent peril or defect in the place or appliances, promptly to notify the employe, that he may be on his special guard to avoid it. It is likewise the duty of the employe, upon learning of any such defect, promptly to notify his employer, that the latter may right himself by restoring the impaired machinery to the standard of his duty. And it is immaterial whether the defect of which the employe complains be latent or obvious, for after discovery the latent defect is as fully known to him as is the open one. If the employe has knowledge of the impairment of the place or machinery, so that danger is thereby increased, and he goes on without complaint or notice to his employer, he will, from his silence and want of diligence be held to have assumed the augmented peril however great, and if injured thereby is entitled to no relief. In such case the employe is the party at fault, and must take the consequences. When, however, the employe, in the line of duty, conveys to the employer notice that an impairment of the instrumentalities furnished him to work with has passed the stage of reasonable safety, and has increased the hazards of the employment beyond the limit of the risk assumed, and the employer, recognizing his default, to avoid an immediate suspension of work, requests and induces the employe to go on, by a promise to repair, then the law charges the former with an assumption of the extraordinary risk pending his promise to repair. At this point the parties are no longer upon equal footing. The servant is without fault, and pursues the work

with greater peril to himself than the relation requires, while the master, who is in default, requests and induces a temporary suspension of his duty, a transient indulgence of his negligence, for his own pleasure or beneficial purpose.

"A promise to repair is confession to a breach of duty, and when a master, to right himself, requests and induces a postponement, either for convenience or profit, no principle of justice will lay the burden of delay upon the unoffending servant. The whole question is bottomed upon the wrong of the master, and it is sophistry to argue that the servant, by confiding in the master's promise, for a reasonable time in which to cure the defects, clearly obvious though they be, should be chargeable with having waived the master's duty to him, and assumed the additional risk himself. To this statement, however, it should be added that, the employer's assumption of liability for injuries resulting from the increased risk does not extend to promises to repair or replace such simple implements as ladders, hoes, hand-saws, and the like.

. . .

" 'A servant who learns of defects in machinery about which he is employed, and gives notice thereof, but is induced to remain in the service by a promise of the master to remedy the defect, may recover for an injury caused thereby, where it occurs within such time after the promise as would be reasonably allowed for its performance, and where it is not so imminently dangerous that a man of ordinary prudence would refuse to work about it.' "

In the case of *Indianapolis and St. Louis Railway Company* v. *Watson* (1887), 114 Ind. 20, 27, 14 N. E. 721, Judge Elliott said:

"The rule which we regard as sound in principle and supported by authority may be thus expressed: The employee who continues in the service of his employer after notice of a defect augmenting the danger of the service, assumes the risk as increased by the defect, *unless the master expressly or im-*

*pliedly promises to remedy the defect.* The promise
of the master is the basis of the exception. If
the promise be absent the exception can not exist."
(Our emphasis.)

In *Brazil Block Company* v. *Hoodlet* (1891), 129 Ind.
327, 27 N. E. 741, the court held where an employee is
directed by his employer to perform an act which in-
volves a risk not contemplated by the usual duties of
his employment, although the risk is equally open to
the observation of both, it does not necessarily follow
that the employee assumes the increased risk, or is
negligent in obeying the order. Unless the danger is
such as to deter a man of ordinary prudence from
encountering it, the employee will not be compelled to
abandon the service, or assume all additional risk, but
may obey the order, using care in proportion to the
risk apparently assumed, and if he is injured the em-
ployer is liable in damages. See also, *Inland Steel Com-
pany* v. *Gillespie* (1914), 181 Ind. 633, 638, 639, 104
N. E. 76; *Terre Haute Electric Company* v. *Kieley,
Administratrix* (1905), 35 Ind. App. 180, 182, 72 N. E.
658, citing with approval the McFarlan case, *supra.*

In 35 Am. Jur. (Master and Servant), p. 694, §269,
it is stated:

"While an employee by continuing in the service
with knowledge of a perilous condition may be
held to be debarred from recovering for
injuries which have resulted therefrom, the
courts have recognized an exception to the
rule barring recovery, which exception is commonly
known as the 'doctrine of notice and promise to
repair.' According to this doctrine, if an employee
complains to or notifies the employer of an ap-
prehended peril, such as may be due to defective
instrumentalities, *and the employer promises to
remedy the defect,* the employee may continue in
the service for a reasonable time, and if within
such time injury ensues as a result of the peril,

he is not, in an action to hold the employer liable for such injury, subject to the defense of contributory negligence on the ground of having continued to work in the face of known peril." (Our emphasis.)

See also Annotations 61 A. L. R., pp. 902, 904.

With the foregoing rule as our guide, we proceed to a consideration of the questions presented by this appeal.

First: Is there any evidence that appellant did not furnish appellee with a reasonably safe machine? We have seen from the evidence that in doing the work which appellant assigned to appellee and using the type of outfit involved herein, it was customary to have the rear tires filled with fluid and the wheels extended. It is undisputed there was no fluid in the tires and appellee did not know this. It is also undisputed the rear wheels were not extended and that appellee knew this. It is further disclosed that the cause of the tractor turning over was the lack of fluid in the tires. Appellant knew that his own tractor, to which the lift was frequently attached, did have ample fluid in the tires and the wheels were extended and performed similar work without difficulty. He was using a borrowed tractor he knew did not work properly, and apparently did not inspect it in reference to these matters. It seems to us if appellant did not see to it that this tractor was equipped in the customary manner, he did not furnish a reasonably safe outfit for the work. Therefore, we feel the evidence is sufficient to find that appellant was negligent in not providing appellee with a reasonably safe tractor to perform his work.

Second: Did the appellant waive his right to the defense of assumption of risk? The answer to this

question is based upon the reasonable meaning of appellant's statement to appellee while they were discussing the faulty manner in which the outfit was operating. Appellee contends that the statement of appellant that "we wouldn't be using it much —the tractor belongs to the boys" indicates they would be using it some and therefore the promise to repair rule has no application in this case. We cannot agree with this contention. In the McFarlan case, *supra,* and the other authorities cited herein, it clearly appears the application of the exception to the general rule is not based on an immediate cessation of the use of the faulty machine. On the contrary, it is based on an understanding that the employee will continue to use the defective machine to carry on his employer's business until there is a reasonable opportunity to remedy the hazard. It seems to us that it would be reasonable to infer that by that statement appellant meant and appellee understood him to mean that because the tractor belonged to his nephews he could not undertake to repair it and that it would only be used occasionally for the immediate necessary spring work on the farm and then he would return it to the owners. In our opinion this was a promise by appellant to remove the hazard by returning the tractor to its owners. So far as the record discloses, this outfit was not used from the date of that conversation until the date of the accident. We are of the opinion appellee, under the circumstances herein, was within the exception to the rule of assumption of the risk.

Finally, appellant contends the record discloses appellee was guilty of contributory negligence because he failed to properly handle and manipulate his equipment. The record discloses that at the time of the accident he was operating the tractor

542

in the same careful manner he had during the many trips he made on that day. We cannot say the record discloses that as a matter of law he was guilty of contributory negligence.

Judgment affirmed.

NOTE.—Reported in 125 N. E. 2d 27.