W. A. HAMBLETON *v.* U. AJA GRANITE COMPANY.

May Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES and SLACK, JJ.

Opinion filed October 4, 1921.

*Sales—Contract to Manufacture—Reasonable Time to Perform— Sale for Cash on Delivery—Independent Contracts—Modification of Contract in Part—Breach of One Independent Contract No Excuse for Failure to Perform Another—Parol Evidence Inadmissible to Contradict Express Terms or Legal Intendments of Written Contract—Competent Answer to Incompetent Question—Contradiction of Immaterial Evidence—Limiting of Proof by Concession of Facts—Improper Argument.*

1. Where plaintiff's method of buying manufactured granite was to submit to defendant, a granite manufacturer, a written and signed order specifying goods, price, time for shipment, and

other requirements, and the defendant then signed and returned a slip accepting the order and agreeing to execute the same, the arrangement was a purchase and sale of goods to be manufactured; and the defendant had a reasonable time in which to manufacture the same.

2. Such sales were for cash on delivery, and before title passed.

3. Under such method each order, when accepted, became a separate and independent contract, and stood alone so far as the rights of the parties thereto were concerned.

4. A written agreement by the defendant that, on payment of a certain sum by plaintiff, it would have all unfulfilled orders ready for shipment by a certain date operated only as a modification of such contracts as to the time within which the work should be completed, and did not affect the provision for payment on delivery.

5. Where there are separate and independent contracts for the sale of goods, default in payment for goods delivered under one contract does not excuse delivery by the seller under the other contract.

6. Parol evidence is inadmissible to vary or contradict the express terms or legal intendments of a written contract for the sale of goods.

7. In an action by the plaintiff for defendant's failure to perform, where, under exception, the latter offered to show that the work involved was not shipped because the plaintiff had not paid for work previously shipped under independent contracts, there was no error where the witness testified that he did not ship the work involved because the plaintiff did not pay for it.

8. The contradiction of immaterial evidence rests in the judicial discretion of the trial court.

9. A party cannot limit his adversary's proof by a concession of facts.

10. Grossly improper, unwarranted, and prejudicial argument, without adequate withdrawal, requires a reversal.

ACTION OF CONTRACT. Answer: Statement of facts relied upon in defence, and complaint in set-off based thereon. Trial by jury at the September Term, 1920, Washington County, *Wilson*, J., presiding. Verdict and judgment for the defendant The plaintiff excepted. The opinion states the case.

*Theriault & Hunt* for the plaintiff.

*Edward H. Deavitt* and *Fred L. Laird* for the defendant.

POWERS, J. [1-3] The plaintiff is a wholesale dealer in manufactured granite at Mansfield, Ohio. The defendant is a granite manufacturer with works at Montpelier. It appears from the record that the plaintiff had been buying granite products from the defendant for several years prior to the time here in question, the usual method of deal being as follows: The plaintiff submitted to the defendant a written and signed order with blue print attached, therein specifying just what the goods were to be, the price, when ready for shipment, and other requirements. The defendant then signed and returned to the plaintiff a printed slip accepting the order, and agreeing to execute the same and ship the goods "in accordance with plans and specifications" as set forth in the order. In essence, then, the arrangement was a purchase and sale of goods to be manufactured. Under it, the defendant had a reasonable time in which to manufacture the goods; and, it not being stipulated to the contrary, the sale was for cash on delivery and before title passed. *Kitson Machine Co.* v. *Holden,* 74 Vt. 104, 52 Atl. 271. Each order when accepted became a separate and independent contract, and stood alone so far as the rights of the parties thereto are concerned. *Auer & Twitchell* v. *Robertson Paper Co.,* 94 Vt. 473, 111 Atl. 570.

Prior to February 19, 1919, there had been some claim on the part of the plaintiff that the defendant was not as prompt in getting out the work and making shipments as the contracts required, and some claim on the part of the defendant that the plaintiff did not pay for the goods as promptly as the contracts required. And on that day there were at least two shipments unpaid for, and five unfilled orders in the defendant's hands. On that date, Bancroft, the plaintiff's agent, called upon the defendant, and the latter signed a writing addressed to the plaintiff, therein agreeing that, if the plaintiff's check for $211 was delivered to it that day, it would have the balance of the plaintiff's orders ready for shipment by April 1, 1919, provided that labor troubles did not interfere. Upon receipt of this writing, Bancroft delivered to the defendant the check referred to.

This action is brought to recover damages for the breach of the agreement contained in this writing. Among other things, the defendant included in its answer a declaration in offset

predicated upon certain unpaid-for shipments, or "jobs", as counsel call them. The verdict was for the defendant to recover $190.86, the same being the contract price of jobs Nos. 30811 and 31076, with interest thereon. The plaintiff brings the case here.

[4]   The writing of February 19 operated as a modification of each of the contracts then remaining unperformed by the defendant. Except as so modified, they remained in full force and effect. It then became the duty of the defendant to complete the jobs ready for shipment by the time specified, without regard to whether that gave it a reasonable time for the work or not. But the defendant was not obliged to make delivery of these jobs by actual shipment or otherwise without payment therefor. Nor was the plaintiff required to pay before delivery. By the original contracts, payment and delivery were acts to be done at the same time; and in this respect, the original contracts were unaffected by the modifying writing. *Akeley* v. *Carpenter,* 87 Vt. 248, 88 Atl. 897. Counsel seem to agree that it was the duty of the defendant to load the granite on the cars, but at that it was not required to release its hold upon it until it had received its pay for it. To be sure, this right of the defendant could be waived, and the contract thereby converted to a sale on credit, and it appears that the defendant had waived it on the jobs previously delivered. But, as we have seen, each job stood on a separate contract which was unaffected by rights that had accrued under others, and there had been no waiver as to these five jobs covered by the writing.

[5, 6]   The defendant claimed that these jobs were finished and ready for shipment at the time specified in the writing, but were withheld because the plaintiff had not and would not pay for them and the other jobs previously shipped. But default in payment for the latter jobs would not afford the defendant a legal justification for refusing to ship the five jobs. *Auer & Twitchell* v. *Robertson Paper Co., supra.* Appreciating this, no doubt, the defendant sought to show a still further agreement; and, under the plaintiff's exception, Ulpiano Aja, the defendant's manager, was allowed to testify, in effect, that, at the time the writing was executed, it was agreed between Bancroft and himself that the plaintiff should pay up the old bills, as well as these for the five jobs, before the latter were shipped. This was error. The contracts were wholly in writing. They consisted of the

written orders, the written acceptance, and the writing of February 19. They were plain and unambiguous. Nothing by way of discussion, negotiation, or agreement then or before had, or entered into could be given in evidence to vary or contradict their express terms or legal intendments. *Hayden* v. *Hoadley,* 94 Vt. 345, 111 Atl. 343. The writing had nothing to do with the old bills. It made no reference to them. If valid, the agreement testified to added a new provision to the arrangement, and bound the plaintiff to do more than he was otherwise bound to do.

The evidence should have been excluded; it was prejudicial; and its admission requires a reversal.

[7] The defendant offered to show by the same witness that the five jobs were withheld because the plaintiff would not pay the old bills. The plaintiff objected, and saved an exception when the court ruled that the evidence was admissible. But when the witness answered, he said that he did not make the shipment because the plaintiff did not pay for the work—evidently referring to the work to be shipped. This, if true, was a sufficient excuse, and no error resulted from this ruling.

[8] A. G. Aja, son of Ulpiano, was a witness for the defendant. In his direct examination, in reply to a proper question, he interjected the statement that the plaintiff did not pay his bills. Counsel for the defendant promptly asked that this irresponsive and improper statement be stricken out. But counsel for the plaintiff objected. And, without action by the court, the incident closed. Later on, the plaintiff offered evidence, the effect of which was to show that the plaintiff paid his bills promptly. This was excluded and the plaintiff excepted. If the plaintiff thought that the remark referred to was of enough importance to prejudice his case, he should have joined in the request to have it stricken out. Practically, it was allowed to stand at his request. It was wholly immaterial to any issue in the case, and, while the general rule is that one is not allowed to contradict such evidence, it was prejudicial in character, and it would not have been error to have admitted the offered evidence. *Farmer* v. *Williams,* 92 Vt. 132, 102 Atl. 932. But whether to admit or exclude it was a question for the trial court in the exercise of a judicial discretion. *Ellsworth* v. *Potter,* 41 Vt. 685. As error elsewhere requires a reversal, it is unnecessary to decide whether, in the circumstances of this case, this discretion was properly exercised.

[9]   Throughout the trial, the plaintiff conceded the right of the defendant to recover for jobs Nos. 30811 and 31076.   This, however, did not preclude the defendant from introducing any relevant evidence in regard to them, if, in its discretion, the court allowed it.   *Dunning* v. *Maine Central R. R. Co.*, 91 Me. 87, 39 Atl. 352, 64 A. S. R. 208.   A party cannot so limit his adversary's proof.   *Terre Haute Elec. Co.* v. *Kieley*, 35 Ind. App. 180, 72 N. E. 658.   The court, of course, is not bound to take the time to hear the evidence, and, if it does, it must be limited to what would be admissible if the concession had not been made.   At the trial below some considerable time was taken with testimony relating to these two contracts.   Much of it was inadmissible.   A part of it was offered and admitted on the ground that it tended to characterize the plaintiff's conduct, and, in spite of the persistent objections of the plaintiff and the adverse rulings of the court, the defendant managed to get before the jury irrelevant matter in a way well calculated to prejudice the plaintiff's case. This should not have been allowed.

[10]   In the course of his argument, counsel for the defendant said, in substance, that the dealings between these parties showed a system of robbery of the defendant by the plaintiff. The latter claimed an exception.   Without granting it, the court cautioned counsel, who replied, ''Perhaps robbery isn't the word, and if you can find any other—'' here the court cut him off, saying: ''You better withdraw the statement as made; are you going to withdraw it?''   After some further words, counsel turned to the jury and said '' 'Systematic method', I withdraw that, gentlemen, and substitute this: Systematic method of defrauding.''   Counsel for the plaintiff claimed an exception, and the court again warned counsel, saying that there was no evidence to justify such a claim.   Thereupon, counsel for the defendant remarked to the jury: ''I withdraw that, and you take it just as you look at it.''   Again counsel for the plaintiff claimed his exception, and it was granted; and the record shows that it was intended to cover the whole incident.   It is enough for us to say that this argument was grossly improper, unwarranted, and prejudicial; that the withdrawal was wholly inadequate, and that all else aside, it would require a reversal.

*Judgment reversed and cause remanded.*