UNION CO-OPERATIVE STORE *v.* BATTISTA FUMAGALLI.

November Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed January 5, 1935.

*Finn & Monti* for the defendant.

*J. Ward Carver* for the plaintiff.

MOULTON, J.   This is an action of contract to recover rent alleged to be due and unpaid under a written lease of real estate. Trial was by jury.   At the close of all the evidence each party moved for a directed verdict.   The plaintiff's motion was granted and the defendant excepted.

After the motions had been made the presiding judge said : ''Both parties having moved for a directed verdict, under the circumstances the Court will direct a verdict in accordance with what the evidence, in the opinion of the court requires.'' Counsel for the defendant at once excepted ''to the ruling of the Court that it is now the duty of the Court to direct a verdict other than against the plaintiff and for the defendant.''   No ruling had been made at that time, and so there was nothing upon which to base the exception, which went to the point that only the defendant's motion could be granted.   But in his brief the exception is said to be to the ruling that a verdict should be directed in accordance with the opinion of the court as to the evidence.   It is said, and truly, that by his motion the defendant did not consent that the case should be withdrawn from the

jury and be decided by the court in accordance with the preponderance of the evidence. But it seems clear that this was not the ground of exception as made below, and so cannot be urged here for the first time. *Higgins* v. *Metzger*, 101 Vt. 285, 296, 143 Atl. 394. Even if it were otherwise, the ruling upon the motion would still be for our consideration. Where both parties move for a verdict, the loser does not waive his right to go to the jury. *Woodsville Guaranty Sav. Bank* v. *Rogers*, 82 Vt. 468, 469, 74 Atl. 85; *Fitzsimons* v. *Richardson, Twigg & Co.*, 86 Vt. 229, 233, 84 Atl. 811; *Mason* v. *Sault*, 93 Vt. 412, 414, 108 Atl. 267, 18 A. L. R. 1426. It is only when it affirmatively appears that neither party wishes to go to the jury that it is for the court to direct such verdict as in its judgment the evidence requires. *Seaver* v. *Lang*, 92 Vt. 501, 510, 104 Atl. 877. But if the evidence were such that the jury, acting reasonably, could have found no other verdict than for the plaintiff, the error, if any, would be harmless, for a judgment will not be reversed where a ruling, although made under an erroneous theory, is otherwise correct. *Donovan* v. *Towle*, 99 Vt. 464, 467, 134 Atl. 588. We proceed, therefore, to consider the merits of the plaintiff's motion.

The lease was in Italian, but a translation, conceded to be correct, was produced and used in the trial court. It commences thus: "Between the undersigned R. Clerici, President; Giacomo Moruzzi, Secretary; Giovanni Ozenda, Treasurer, of the Union Co-operative Store of Barre, Vermont, who together form the Board of Trustees of the Union Co-operative aforesaid, and Battista Fumagalli established in the manner following: The above named trustees lease to Mr. Fumagalli for and during five years, that is to say, from March first 1929 to March first 1934" the premises described. "The rent is established at Forty-nine dollars and ninety nine cents ($49.99) payable monthly in advance on the first day of each month."

The defendant argues that the plaintiff has no standing in court, because it is a corporation, but was described in the writ as "a co-operative association duly organized, chartered and existing under the laws of the State of Vermont." The plaintiff says that this point was not raised below; the defendant says that it was. The transcript does not show any mention of it. And, it may be indicated, the question should have been raised by a plea in abatement or in bar, which was not done.

Chitty, Pleading (16 Am. Ed.) *464; *Boston Type & Stereotype Foundry* v. *Spooner*, 5 Vt. 93, 95; *Lord* v. *Bigelow*, 8 Vt. 445, 458; *Trustees of Caledonia County Grammar School* v. *Burt*, 11 Vt. 632, 642; *Aetna Ins. Co.* v. *Wires*, 28 Vt. 93, 95. If not thus pleaded, it is waived. Gould on Pleading (4 Ed.) par. 153.

The defendant also insists that the plaintiff cannot maintain this suit because it was not a party to the lease, which was an agreement between the board of trustees and the defendant. The question does not appear to have been raised below. However, the premises were owned by the plaintiff. In the lease, after the signatures of the three trustees, are the words, "Signed by and for the benefit of the Union Co-operative Store of Barre, Vermont." The acknowledgment taken before a notary public, states that the trustees signed their names "representing the Union Co-operative Store." And in his answer the defendant admits that "the parties (to the lease) were the plaintiff and the defendant." Under these circumstances, even if the point had been raised it would avail nothing.

The principal dispute in this case arises concerning the construction of the provision of the lease as follows: "And the parties hereto are in full accord also as follows: None of the parties hereto can extinguish this contract before the termination of its own maturity, and at such time prior to the year of its maturity one of the parties do not desire to continue the contract herein and desire in some manner to sever themselves entirely from the agreements here in this contract, must give the other parties at least five months notice before the termination of this contract and in such case all the conditions and clauses of this contract shall be valid until the last day of its maturity."

The defendant entered into possession of the premises, but became dissatisfied with the amount of the rent. A week or two after February 26, 1932, he gave oral notice to the trustees of the plaintiff of his intention to cancel the lease in five months' time to which the trustees refused to agree. He paid no rent from and after first of August, 1932, and abandoned the premises. It is claimed in his behalf that the lease by its terms permitted concellation by either party at any time prior to the last year which it had to run, upon giving at least five months' notice. The plaintiff's position is that the clause in question had reference to the renewal of the lease after its expiration

and required the notice to be given in the event that either party did not wish to renew it, and this was the construction adopted by the trial court.

The opening clause of the paragraph of the lease, above quoted, that "None of the parties hereto can extinguish this contract before the termination of its own maturity," means, of course, that no party to the agreement can escape from his obligations thereunder before the day upon which, by its own terms, it comes to an end, that is March 1, 1934. But this clause is modified by what follows "and at such time prior to the year of its maturity one of the parties do not desire to continue the contract herein, and desire in some manner to sever themselves entirely from the agreements here in this contract, must give the other parties at least five months notice before the termination of this contract." This language is an exception to the prohibition contained in the preceding provision and a method by which the lease may be cancelled before the term of five years has expired. It is to be construed to mean this: If one of the parties does not desire to be longer bound by the contract, he can terminate it by giving the specified notice, at any time prior to the "year of its maturity," which is the last year it has to run, that is the year March 1, 1933, to March 1, 1934. In other words, the lease must be cancelled, if at all, by notice given before March 1, 1933, and if it is not given before that day, the lease must run its full term. The concluding phrase, "before the termination of the contract," has reference to the termination set by the notice, and means "before the expiration of at least five months from and after the giving of the notice." There is, it may be observed, nothing in the instrument which specifically gives the right to extend or renew it. If the construction urged by the plaintiff were adopted, the phrase "year of its maturity" must still be taken to mean the year from March 1, 1933, to March 1, 1934, and so the provision for at least five months' notice would be meaningless, since, ex hypo-. thesi, the lease cannot be cancelled before March 1, 1934, and the notice must be given before March 1, 1933, of necessity more than five months must elapse before the last day of the term. The last clause, "and in such case all the conditions and clauses of this contract shall be valid until the last day of its maturity," taken in connection with what goes before it, means that when the notice has been given the lease is valid and binding until the

expiration of five months (or whatever longer period may be assigned in the notice) thereafter. The phrase "last day of its maturity" as used here, is the last day of its binding force as set by the notice.

The sense of the instrument, taken as a whole, is that although the duration of the lease is for five years, yet, upon the prescribed notice being given, it may be cancelled before the expiration of that period. So it appears that the construction adopted by the trial court was error, and the exception to the granting of the plaintiff's motion for a verdict, upon this ground, is sustained.

In view of what we have said it is not necessary to consider the claim of the defendant that the lease was also terminated by a mutual surrender or his exceptions to the exclusion of a written notice, dated February 26, 1932, offered in evidence. The lease does not prescribe a written notice and so the oral notice was sufficient.

In his brief, the defendant admits that under his contention, there is still one month's rent due and unpaid, since the five months' notice became effective, on August 31, 1932, and that judgment should be rendered for the plaintiff to recover this amount. So the entry is:

*Judgment reversed, and judgment for the plaintiff to recover the sum of $49.99, with interest from September 1, 1932, with costs in the county court less the defendant's costs in this Court.*