JOHN D. BACON, RECEIVER OF THE NATIONAL BANK
OF BELLOWS FALLS *v.* RICHARD ROBBINS BARBER.

February Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and
JEFFORDS, JJ.

Opinion filed May 2, 1939.

*Samuel H. Crosby* and *James Brownlee* for the plaintiff.

*Frank E. Barber* and *F. Elliott Barber, Jr.,* for the defendant.

MOULTON, C. J.   This is an action brought by the plaintiff as receiver of the insolvent National Bank of Bellows Falls to recover an assessment duly levied upon the shares of the stock of that institution, of which the defendant is claimed to have been the owner on the day upon which the bank was closed. The defendant denies that he was then the owner.   The cause was tried by jury, and at the close of plaintiff's evidence the trial court directed a verdict for the defendant, to which the plaintiff excepted.

There seems to be little dispute concerning the facts which the evidence tended to show. The defendant's uncle, Charles N. Robbins, died testate, his will, dated August 8, 1922, containing the following provision: "My stock in the Vermont National

Bank of Brattleboro, and stock in the National Bank of Bellows Falls, Vt., I give, devise and bequeath as follows, viz: The use and income of the same to my said wife during her natural life; then use and income to my daughter, Mary Irene R. Washer during the term of her natural life. After the decease of my said daughter I give and bequeath said bank stocks to Richard Robbins Barber [the defendant] now of Montpelier, Vermont, to him and his heirs forever.'' It appears by the defendant's answer that the will was filed in the probate court on August 17, 1923, and admitted to probate. The Vermont-Peoples National Bank of Brattleboro was appointed trustee in 1924. The defendant was, at the date of the will, a minor, but attained his majority in 1926. Mrs. Robbins died, as appears from the defendant's answer, in December, 1931, and Irene Washer died on February 27, 1933. The stock was carried on the books of the Bellows Falls Bank in the name of the ''Vermont-Peoples National Bank, as trustee of the estate of Charles N. Robbins.'' The final account of the trustee was filed in, and approved by, the probate court for the District of Marlboro on June 21, 1933. The certificates of stock in the Bellows Falls bank could not be transferred to the defendant on the books of that institution because of its insolvency, and were sent by the trustee to the defendant by registered mail on January 13, 1936; the other bank stock, duly transferred to him, was also sent in the envelope. The defendant received the certificates and has never returned them.

The National Bank of Bellows Falls was closed on March 4, 1933. A conservator was appointed, the assessment levied by the comptroller of the currency on March 12, 1934, and notice thereof was sent to the Vermont-Peoples National Bank, as trustee, on March 20, 1934. The reply acknowledged receipt, and informed the conservator that there were no assets with which to pay the assessment.

The plaintiff became receiver on August 31, 1937. He wrote several letters to the defendant concerning the payment of the assessment, and held a telephonic conversation with him about the middle of April, 1938, regarding the same matter. No payment having been made, on April 18, 1938, a notice was sent by registered mail which was returned to the receiver unopened.

The liability which is sought to be enforced arises un-

der the Revised Statutes of the United States, § 5151, sec. 63 and 64, tit. 12, U. S. C. A., which provide that "the shareholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his shares therein, at the par value thereof in addition to the amount invested in such shares." This statute "contemplates that on every share of stock held in a national bank someone shall be legally liable for assessment." *Riley* v. *Bondi*, 64 Fed. (2d) 515, 517; *McNair* v. *Darragh*, (8th Cir.) 31 Fed. (2d) 906, 907. The liability is imposed by the statute as an incident of the ownership. *Laurent* v. *Anderson*, (6th Cir.) 70 Fed. (2d) 819, 823; *Scott* v. *Latimer*, (6th Cir.) 89 Fed. 843, 852; *Christopher* v. *Norvell*, 201 U. S. 216, 225, 50 L. ed. 732, 736, 26 Sup. Ct. 502, 5 Ann. Cas. 740. The assessment made by the comptroller of the currency is conclusive as to its necessity and the amount to be collected. *Christopher* v. *Norvell, supra*, (201 U. S. at page 222, 50 L. ed. at page 735, 26 Sup. Ct. at page 503, 5 Ann. Cas. 740); *Stephens* v. *Hamilton*, (7th Cir.) 81 Fed. (2d) 324, 326; *Miller* v. *Stock*, (3rd Cir.) 65 Fed. (2d) 773, 774, 90 A. L. R. 1061. It is the duty of the receiver to enforce the individual liability of the stockholders. U. S. Rev. Stat. § 5234, sec. 192, tit. 12, U. S. C. A.; *Barbour* v. *Thomas*, (D. C.) 7 Fed. Supp. 271, 276.

■■ The fact that the stock was not registered in the name of the defendant, but in the name of the Vermont-Peoples National Bank as trustee is not conclusive. "That the actual owner of the stock may be held for the assessment, although his name does not appear upon the transfer books of the bank, is well settled." *Early* v. *Richardson*, 280 U. S. 496, 499, 74 L. ed. 575, 50 Sup. Ct. 176, 177, 69 A. L. R. 658; *Forrest* v. *Jack*, 294 U. S. 158, 162, 79 L. ed. 829, 55 Sup. Ct. 370, 372, 96 A. L. R. 1457 (rehearing den. 294 U. S. 733, 79 L. ed. 1262, 55 Sup. Ct. 543); *Ohio* Valley Nat. Bank v. *Hulitt*, 204 U. S. 162, 167, 51 L. ed. 423, 427, 27 Sup. Ct. 179; *Pauly* v. *State Loan and Trust. Co.*, 165 U. S. 606, 619, 41 L. ed. 844, 849, 17 Sup. Ct. 465. See, also, *Laurent* v. *Anderson*, (6th Cir.) 70 Fed. (2d) 819, 823; *O'Keefe* v. *Pearson*, (1st Cir.) 73 Fed. (2d) 673, 97 A. L. R. 1243, 1247; *Houghton* v. *Hubbell*, (1st Cir.) 91 Fed. 453, 455; *Lucas* v. *Coe* (C. C. A.) 86 Fed. 972, 974; *Keyes* v. *Am. Life, etc., Ins. Co.*, (D. C.) 1 Fed. Supp. 512, 513; *Goess* v. *Brown*, (D. C.)

12 Fed. Supp. 517, 518; *Slaughter* v. *Quigley,* (D. C.) 9 Fed. Supp. 130. Accordingly it has been held that where the stock is registered in the name of a holding company or of a trustee, the person having the beneficial interest is liable for the assessment. *Metropolitan Holding Co.* v. *Snyder,* (8th Cir.) 79 Fed. (2d) 263, 264, 103 A. L. R. 912; *McNair* v. *Darragh,* (8th Cir.) 31 Fed. (2d) 906, 908; *Keyes* v. *Am. Life, etc., Ins. Co., supra.* And in *Forrest* v. *Jack, supra,* the widow of the testator having a life interest in the stock, which was not registered in her name, was said to be the actual owner.

By his uncle's will the defendant took an interest in remainder in the trust estate, which vested in him immediately upon the death of the testator, although the enjoyment was postponed until the death of the second life tenant. *In re Carter's Will,* 99 Vt. 480, 485, 134 Atl. 581, 61 A. L. R. 1005; *In re Will of Mansur,* 98 Vt. 296, 298, 127 Atl. 297; *In re Robinson's Estate,* 90 Vt. 328, 333, 334, 98 Atl. 826; *Harris* v. *Harris' Estate,* 82 Vt. 199, 205, 72 Atl. 912; *Burton* v. *Provost,* 75 Vt. 199, 201, 54 Atl. 189; *In re Tucker's Will,* 63 Vt. 104, 105, 21 Atl. 272, 25 A. S. R. 743; *Jones, Admr.* v. *Knappen,* 63 Vt. 391, 394, 22 Atl. 630, 14 L. R. A. 293; *Weatherhead* v. *Stoddard,* 58 Vt. 623, 629, 5 Atl. 517, 56 A. R. 537. His acceptance of the bequest is to be presumed. The rule is that *prima facie* every estate, whether given by will or otherwise, is supposed to be beneficial to the person to whom it is given, and, upon the ground of implied benefit, he is presumed to assent to it, even though he may be ignorant of the transaction, until the contrary appears. *Church's Exr.* v. *Church's Estate,* 80 Vt. 228, 232, 67 Atl. 549; *Harris* v. *Harris' Estate,* 82 Vt. 199, 210, 72 Atl. 912; *Crossman* v. *Crossman's Estate,* 100 Vt. 407, 413, 138 Atl. 730; *Tarr* v. *Robinson,* 158 Pa. 60, 62, 27 Atl. 859, 860. And there is, indeed, nothing here to show that the bequest in remainder, which, as we have seen, vested *eo instante* upon the death of the testator, was not at that time in fact, as well as by implication, beneficial to the recipient. This presumption of acceptance is not conclusive, for a legatee may renounce the provision in his favor and leave the title as if the gift had not been made. *In re Howe's Estate,* 112 N. J. Eq. 17, 163 Atl. 234, 237; *Albany Hospital* v. *Albany Guardian Soc'y,* 214 N. Y. 435, 440, 108 N. E. 812, Ann. Cas. 1915D, 119; *Brown* v. *O'Keefe,* 300

U. S. 598, 602, 81 L. ed. 827, 57 Sup. Ct. 543, 546. But, while having in itself no probative force, the presumption has the effect of casting upon the party claiming nonacceptance the duty of going forward with evidence in support of his contention. *Tyrrell* v. *Prudential Ins. Co.*, 109 Vt. 6, 23, 192 Atl. 184, 115 A. L. R. 392; *State* v. *Lizotte*, 109 Vt. 378, 387, 388, 197 Atl. 396. In this meaning of the phrase, the burden of proof is upon him. *Tarr* v. *Robinson, supra; Chilcoat* v. *Reid,* 154 Md. 378, 140 Atl. 100, 104. Recognition of this principle is found in *Church's Exr.* v. *Church's Estate, supra*; *Harris* v. *Harris' Estate, supra,* and *Crossman* v. *Crossman's Estate, supra,* wherein it is said that acceptance is presumed ''until the contrary appears.'' (100 Vt. 407, 138 Atl. 732).

The right of renunciation must, however, be exercised within a reasonable time after opportunity is afforded the donee to do so; and must be shown by some positive, overt act or course of conduct. *In re Howe's Estate, supra.* Since the defendant was a minor at the time of his uncle's death, he had a reasonable time after reaching majority in which to reject the bequest. See *Spencer* v. *Lyman Falls Power Co.*, 109 Vt. 294, 301, 196 Atl. 276. It is argued in his behalf that he was not aware of the terms of the will until he received the certificates of stock from the trustee in 1936; and while such want of knowledge does not affect the presumption of acceptance (*Harris* v. *Harris' Estate, supra; Church's Exr.* v. *Church's Est. supra*) it may, no doubt, be considered upon the question whether a timely rejection has been made. *Banking Commission of Wisconsin* v. *Hamilton,* (Wis.) 281 N. W. 693, 695. The only testimony upon this point was his own and was to the effect that a few months after the testator's death he knew that his uncle had left him something, but, being young, he did not understand very well. This evidence clearly referred only to the time specified, and the failure to act after reaching his majority may give rise to the inference that though ignorant of the exact provision made for him he accepted whatever bequest might have been made. It is not, we think, unreasonable to require one who has knowledge of a bequest in his favor to take steps to inform himself of its exact nature so that, if it appears best to him to reject it, he may do so within a reasonable time. We need not concern ourselves with the defendant's situation dur-

ing his minority. That time is long past. So far as the evidence tends to show, he made no effort at any time to discover the terms of the will, easily as that might have been done, although he knew that there was a provision in his favor therein. Even after receipt of the securities in 1936 he kept them without dissent. On the evidence it would have been open to the jury to find that a reasonable time had elapsed between the defendant's attainment of majority and the death of Irene Washer, without any act or word indicating a renunciation and, consequently, that the ·defendant had accepted the bequest.

■ Moreover, the shares in the insolvent bank were not the only assets of the trust estate. There were also forty-one shares of stock in another bank, the solvency of which is not questioned. There was here a single bequest, including different properties as an aggregate. No intention to the contrary appearing from the will, the donee cannot accept the beneficial property and disclaim the burdensome one. *Brown* v. *Routzahn,* (6th. Cir.) 63 Fed. (2d) 914, 916 (cert. den. 290 U. S. 641, 54 Sup. Ct. 60, 78 L. ed. 557) ; *Guthrie* v. *Walmond,* 22 Ch. Div. 573, 577; *Green* v. *Gritten,* 42 L. J. C. Ch. 187, 190; *In re Kingston,* (1902) 1 Ch. 203, 213; *In re Tremblay,* 48 Ont. Law Rep. 321, 323; *State Banking Co.* v. *Hinton,* 178 Ga. 68, 172 S. E. 42, 91 A. L. R. 596, 602; Jarman on Wills (7th ed.) 530; and see cas. cit., annotation 91 A. L. R. There is no claim of nonacceptance of the stock of the latter bank.

■ The defendant argues that since there was no evidence that a final decree of distribution in the Robbins estate had been made prior to March 4, 1933, the title to the stock must be taken to have been in the estate at that time. But the estate in remainder had become vested in interest long before then and it became vested in possession immediately upon the death of the second life tenant. From the lapse of time since the probate of the will, and from the fact that the trust property came into the possession of the trustee in 1924, and has since been administered by it, without, so far as appears, any objection on the part of the executor, it may be inferred that whatever lien the latter may have had has been satisfied. *Spencer* v. *Lyman Falls. Power Co.,* 109 Vt. 294, 300, 196 Atl. 276, and cas. cit. The rights and title of distributees do not originate in the decree of distribution, but are derived from the decedent under the terms

of the will. Hence the executor may vest in them the title and possession of their shares without an order of distribution, and if he pays the right parties their proper shares, he is protected. *In re Clark's Estate,* 100 Vt. 217, 221, 222, 136 Atl. 389; *In re Scott's Account,* 36 Vt. 297, 300. The trustee, of course, had a lien upon the trust property for expenses incurred in the execution of its duties (*Langdon* v. *Vermont & Canada R. R. Co.,* 54 Vt. 593, 600; *Vermont & Canada R. R. Co.* v. *Vermont Central R. R. Co.,* 50 Vt. 500, 580; *Renssalaer & Saratoga R. R. Co.* v. *Miller et al.,* 47 Vt. 146, 152), but this does not affect the question of the actual and beneficial ownership of the stock.

There was, therefore; evidence tending to support the plaintiff's claim and the direction of a verdict for the defendant was error.

The plaintiff, also, moved for a verdict, which was denied subject to his exception, and now asks us to render judgment for him. But this we cannot do. Both motions were made at the close of the plaintiff's evidence. In making his motion the defendant did not waive his right to proceed with his evidence, and then, if there should be an issue of fact, have the case submitted to the jury. *Mason* v. *Sault,* 93 Vt. 412, 414, 108 Atl. 267, 18 A. L. R. 1426. The mere fact that both parties moved does not amount to consent that the case should be taken from the jury, where, as here, it does not affirmatively appear from the record that each desired that the questions in issue should be submitted to the court upon the evidence as it then stood. *Scott* v. *Bradford Nat. Bank,* 107 Vt. 226, 230, 231, 179 Atl. 149; *Union Co-op. Store* v. *Fumagalli,* 107 Vt. 145, 148, 175 Atl. 847; *Town of Brattleboro* v. *Carpenter,* 104 Vt. 158, 164, 158 Atl. 73; *Seaver* v. *Lang,* 92 Vt. 501, 510, 104 Atl. 877; *Fitzsimmons* v. *Richardson, Twigg & Co.,* 86 Vt. 229, 233, 84 Atl. 811.

*Judgment reversed and cause remanded.*