In Re Pirie Estate.

(71 A2d 245)

January Term, 1950.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion filed February 7, 1950.

*Bove, Billado & Dick* and *Philip B. Billings* for the petitioners.

*Lawson & Paterson* and *Hunt & Hunt* for the petitionees.

SHERBURNE, C. J. This is a petition to the probate court for the District of Randolph by Bernie E. Gomo individually and as ancillary special administrator of the estate of his mother, Maude Isabelle Pirie Gomo, late of North Carolina, deceased, seeking to establish certain rights relative to a trust estate under the will of James K. Pirie, late of Williamstown, deceased, as decreed by the probate court, and for an accounting by the trustees of the trust estate. Muriel E. Gomo, a daughter of Maude Isabelle Pirie Gomo, appeared as a party plaintiff. After making findings of fact the probate court dismissed the petition, except as to the prayer that the trustees account, and ordered a full accounting of the management of the trust estate. From this an appeal was taken to the county court, where a hearing was had, findings of fact were made, and judgment entered. The case comes here upon petitioner's exceptions.

James K. Pirie died testate on October 13, 1921. He was survived by his widow, Mary S. Pirie, and ten children respectively born in the years indicated, namely: James G. Pirie 1883, Mary Pirie Craig 1884, Fred F. Pirie 1886, Grover C. Pirie 1887, Maude Isabelle Pirie Gomo 1889, Merle Pirie Bassett 1893, Bessie Pirie Sartwell 1894, Daisy Pirie Guernsey 1896, Elsie Pirie Riddle 1898 and Christina Pirie Haskett 1900.

In its decree dated June 16, 1923, the probate court, in accordance with the will, decreed to the two oldest sons, James G. Pirie and Fred F. Pirie, as trustees, during their lives and the life of the survivor, all of testator's granite quarry property, machinery, tools and supplies, an amount of Liberty bonds and War Savings stamps, and the residue of the estate remaining after the payment of all legacies and devises decreed to the widow, children and other legatees upon trust as follows: that the named trustees were to each receive a stated annual salary for their services in conducting the quarry business, and, after payment of all salaries and expenses and keeping up the property and equipment at all times in good

condition, to create a sinking fund of $20,000.00 from earnings as soon as possible, and keep the same at interest, and only use the fund for certain purposes, and if depleted the amount so used to be replaced as soon as the business will allow, so that the amount of the fund will always be kept good. We now quote: "After the above conditions have been fully performed, any and all profits then remaining shall be divided annually by the aforesaid trustees and by them paid in equal proportions to each of the sons and daughters then living and to said wife, Mary S. Pirie. The sons and daughters now living are James G. Pirie, Fred F. Pirie, Grover C. Pirie, Maude Pirie Gomo, Elsie E. Riddle, Daisy Pirie, Christina Pirie, Merle Pirie Bassett, Mary Pirie Craig and Bessie Pirie Sartwell. * * * And when both James G. Pirie and Fred F. Pirie are deceased, then the entire remainder of the Quarry property shall belong, and said Court hereby decrees said remainder, in fee simple to the then living grandchildren of said James K. Pirie, to be equally divided between them." In addition the probate court decreed to Mary S. Pirie, the widow, during life one equal eleventh part of the annual net income of the quarry property, and, mentioning each of the ten children in separate paragraphs in the following order, decreed to Grover "during his life one equal tenth part, after mother's life interest, until the death of said trustees, in the annual net income of said Quarry trust estate, after creation of the $20,000 sinking fund", and to Christina, Bessie, Daisy and Merle, each a like one tenth part "during her life" and until the death of the trustees, and to James, Fred, Maude Pirie Gomo, Elsie and Mary, each a "life interest till death of trustees" in one tenth of such annual net income after mother's life interest.

On or about the date of the decree James G. Pirie and Fred F. Pirie qualified and commenced their duties as co-trustees, and continued to act as such until the death of James G. Pirie on September 4, 1947. Since then Fred F. Pirie has acted as sole surviving trustee. The co-trustees and the surviving trustee have treated the calendar year as being the fiscal year of the trust estate. The $20,000.00 sinking fund was created and has been maintained. The amount of the trust estate which has been distributed by the trustees after the end of each fiscal year up to and including 1946 has been distributed in equal shares to the widow and children of the testator as were living at the end of each fiscal year, and to no other persons. Maude Pirie Gomo died in 1933, and none of the

amount distributed for that fiscal year or any fiscal year thereafter was distributed to her, to her estate, or to the petitioners. Bessie died in 1936, and none of the amount distributed for that fiscal year, or any year thereafter, was distributed to her or to her estate. The widow died on December 11, 1945.

The trustees never rendered any annual account in the manner required by law until presentation of an account for the period January 1, 1946, to December 31, 1946. The hearing upon this has been postponed pending these proceedings. The files of the probate court contain several reports of an accountant for various years, several letters from the trustees to the probate court, and various communications relative to the state of the business of the trust and disbursements made to beneficiaries.

Maude Pirie Gomo, late of North Carolina, died testate, and left surviving her three children and her husband, all of whom continue to survive. In June 1945, these three children made a demand upon the trustees for the share of the trust estate that would have been their mother's had she continued to live. On January 8, 1947, Bernie E. Gomo, one of the children, was duly appointed and qualified as ancillary special administrator of his mother's estate in this State.

The county court, so far as here material, adjudged that the decree of the probate court as it relates to the trust estate is the law of the case and is final and conclusive; that by the terms of the decree the net income or profits derived from the trust, after the deductions referred to in the decree, are to be divided annually and paid in equal proportions to each of the sons and daughters of the testator who shall then be living, subject to the rights of the widow; that Maude I. Pirie Gomo having died in 1933, her estate is not entitled to the share of the annual net income from the trust which she would have had for the year 1933 or any succeeding year if she had lived throughout the year 1933 and thereafter; that Bessie Pirie Sartwell having died in 1936, her estate is not entitled to the share of the annual net income which she would have had for that year if she had lived throughout the year; and it was not the duty of the trustees, or either of them, to retain one eleventh of the net income from the date of the death of Bessie Pirie Sartwell to December 11, 1945, the date of the death of the widow of the testator, and from that date to retain one tenth of the income in trust for the benefit of the grandchildren of the testator

who should be alive at the time of the death of the surviving trustee; and that Fred F. Pirie, surviving trustee, and the executor of the deceased trustee were ordered to render a full account relative to the trust as required by law.

The petitioners in their brief claim that the only judgment legally supportable is as follows:

"A. That under the decree Maude is decreed an equitable interest in the annual net income after the fulfillment of certain conditions for the duration of the lives of James G. and Fred F., said interest being a 1/11th interest therein until the death of Mary P. Barney (the name of the widow after remarriage), and thereafter, during the life of the trust, a 1/10th interest; and that upon the death of Maude the share that would have been hers had she continued to survive is payable to her estate; and if this view is not adopted:

"B. That upon the death of Maude or such other beneficiaries as have or may die before the termination of the trust, the share of income accruing after such death as would have been payable to such beneficiary had he or she continued to live is impressed with a trust for the benefit of the grandchildren of James K. Pirie living when both trustees shall have died, and is then distributable to such grandchildren as a part of the remainder; and further, if the first view is not adopted:

"C. That upon the death of any of the beneficiaries, including Maude, the annual net income of the year in which such beneficiary dies is apportionable and payable to the decedent's estate."

Before discussing the points raised it seems well to point out that the probate court should not have attempted to decree the avails of the trust estate after the death of the trustees to the grandchildren of the testator then living. After the death of the surviving trustee it will be necessary to ascertain who are the then living grandchildren and to decree to them the avails of the trust estate. See *In re Beach's Est.*, 103 Vt 70, 84, 85, 151 A 654; *In re*

*Peck's Est.,* 96 Vt 183, 189, 118 A 527; *In re Wells' Est.,* 69 Vt 388, 393, 38· A 83; *Morse, Excr. of Turner's Est.* v. *Lyman,* 64 Vt 167, 171, 24 A 763. The decree in this case decreed the quarry property to the trustees upon trust, as provided in the will, and used the language of the will about the distribution of the income to the widow and children of the testator, except for immaterial variations. There was no need to spell out the particular shares of the widow and children, as the correctness of the distribution made by the trustees could be determined upon the annual accounting. In this respect the decree departs from the better and customary practice in the administration of trust estates in the probate court.

The decree was final and unappealed from. It follows that even if erroneous it is conclusive and establishes the law of the case as to the construction of the will. *In Matter of the Estate of Taylor,* 110 Vt 80, 85, 2 A2d 317, and cases cited.

The petitioners argue that the language in the decree as to Maude Pirie Gomo "also life interest till death of trustees in 1/10 of annual net income" means that the nature and quantity of Maude's interest is clearly set out as an equitable life interest measured by the life of the trustees, and that it is a vested interest since the directions as to payment of the mother's life interest and the creation of the sinking fund relate to the time of payment only. In support of this they call attention to the uniform shares spelled out to each child, and say that had the probate court intended the force of its decree to be that as each child died the number of shares in the trust estate would diminish, it would have been a simple matter to so provide. Attention is also called to the uniform inheritance tax of $8.40 assessed upon each child's life interest, and to the words of inheritance in the last paragraph but one of the decree, which is the habendum clause.

Before discussing these claims and arguments attention is called to a few well recognized rules of construction. Where the terms of a writing, whatever its character, are plain and unambiguous, there is no room for construction, and it is to be given effect according to its language. *Brownell* v. *Burlington Fed. Sav. & Loan Assoc.,* 115 Vt 455, 458, 63 A2d 862; *In re Beach Estate,* 112 Vt 333, 335, 24 A2d 340; *In re Robinson's Will,* 101 Vt 464, 467, 144 A 457, 75 ALR 59. It is the duty of the court if possible to construe the instrument so as to give effect to every part, and

form from the parts a harmonious whole. *Freeguard* v. *Bingham,* 108 Vt 404, 406, 187 A 801; *Vermont Shade Roller Co.* v. *Burlington Traction Co.,* 102 Vt 489, 502, 150 A 138. The use of a term susceptible of two or more meanings does not necessarily make the meaning of the sentence in which it appears ambiguous or doubtful. *In re Robinson's Will, supra.*

We will, as often suggested, take the decree·by its four corners, consider it in all its parts, and thus give effect to its language. As we have suggested, it was not necessary to spell out the one eleventh of the net income to the widow and the one tenth of the rest of the net income to each child. Had the probate court not done so there would be little doubt that the county court had arrived at the correct construction. Under the provisions of the decree of the quarry property to the trustees there can be no question that only such children of the testator as were alive when the sinking fund was accumulated were entitled to share in the net income. The only possible question that could arise under that provision was whether a child must be alive at the time of an annual distribution of income to share therein. The probate court has answered this in the affirmative by first decreeing to each of five children during his or her life one equal tenth part, after mother's interest, until death of the trustees. Of these five it is instructive to note that one was born in 1887, one in 1900, one in 1894, one in 1896, and one in 1893, taking them in the order mentioned. Now coming to the other five that were each decreed a "life interest till death of trustees" in one tenth of the annual net income after mother's life interest, one was born in 1883, one in 1886, one in 1889, one in 1898, and one in 1884, taking them in the order mentioned. This shows that each five children were picked at random, and there was no reason why one child should be given a greater estate than another, and it would be unreasonable to conclude that the probate court so intended. Then too the phrase "life interest till death of trustees" is not the usual language used to give an interest to be limited solely by the life of a third party. This would be done by omitting the word "life" from the quoted phrase. If we omit "till death of trustees" the meaning of "life interest" is unmistakable. As to each of the ten children the decree mentions "after mother's life interest". "Life interest" in the one case means the same as in the other. The probate court seems to have abbreviated when it came to the last five children. In the cases of the first five it uses

the phrases "until the death of said trustees" or "until death of trustees". In the cases of the last five it is always "till death of trustees". There can be no question that by use of the term "life interest" in the decree of one tenth of the annual net income of the trust estate to Maude Pirie Gomo, the probate court intended an interest during her life, and we so hold.

As to the inheritance tax of $8.40 upon the share of each child in the annual net income it should be noted that except for James and Mary each of the other children are younger than Fred, the younger trustee, and would have a life expectancy beyond the life of the trust. Such taxes were agreed upon by the executors of the estate and the tax commissioner. James was the oldest child and one of the executors, so he had no fault to find. True Mary was two years older than Fred, but the amount involved was small. We attach little significance to any discrepancy here as contrasted with the clear intent of the decree.

The habendum runs to the widow and each of the children, "their heirs, executors, administrators and assigns forever." The widow and the children were each decreed either real estate or personal property, or both, in addition to their interest in the income from the trust estate. This habendum is clearly repugnant to the grant of the shares in the annual net income from the trust during the lives of the widow and children. The habendum, when repugnant to the grant, yields to the manifest intent and terms of the grant. *Bennett* v. *Bennett,* 93 Vt 316, 318, 107 A 304 and cases cited. The habendum cannot enlarge the grant. *DeGoosh* v. *Baldwin & Russ,* 85 Vt 312, 317, 82 A 182; *Deavit* v. *Washington County,* 75 Vt 156, 161, 53 A 563; *Flagg* v. *Eames,* 40 Vt 16, 23, 94 Am Dec 363; *Smith* v. *Pollard,* 19 Vt 272, 277. Thus in *Flagg* v. *Eames, supra,* where the premises clearly showed that a life estate only was intended, the habendum to the grantee, "and her heirs and assigns, to her and their own proper use, benefit and behoof forever", was held to yield to the manifest intent and terms of the grant. The habendum may be considered in aid of the construction of the grant. *DeGoosh* v. *Baldwin & Russ, supra; Deavitt* v. *Washington County, supra;* but here the terms of the grant are clear and unmistakable, and the habendum must yield to the grant.

Nowhere in the decree, other than in the decree to the trustees, has the probate court spelled out what becomes of the share of

the income given to a child upon the child's death. There is no provision that such share of the income shall be accumulated for the benefit of the grandchildren, who will take the trust estate at the termination of the trust. This is clearly not intended in the decree of the remainder to the grandchildren, since that provision is preceded by the provision about dividing the income between the widow and children of the testator, which provides for dividing all of the profits annually between the children then living and the widow. True as suggested, while the probate court was spelling out these one tenth shares in the net income to each of the ten children, it might easily have provided that as each child died the number of shares would diminish. While spelling out these shares it could also easily specially have provided as to where any share which a child would have received had he lived would go in the event of his death. We must, however, take the decree as written. From an examination of all of its parts the only reasonable conclusion is that the share which a deceased child would have taken if he had lived was to be divided between the living children and the widow so long as she lived. The only practical effect of the probate court's attempt to spell out the fractional shares was to construe the provision in its decree to the trustees, so as to make certain that only those children alive at the time of an annual division of income are entitled to share in it.

The foregoing also answers petitioners' claim that upon the death of the widow or a child during a year the income should be apportioned up to the time of death. The income was to be divided only annually. Furthermore, this income was from the operation of a business, where the income does not accrue steadily, and where it was not determined until the end of the year if there was any profit or net income. As between persons successively entitled, the profits of a business are not apportionable, unless the instrument upon which the rights are founded contemplates apportionment. 33 Am Jur Life Estate, Remainders and Reversions, § 298. Mc-Keen's *Appeal,* 42 Pa 479; *Ibbotson* v. *Elam,* LR 1 Eq. (Eng) 188; *Browne* v. *Collins,* LR 12 Eq. (Eng) 586; *Jones* v. *Ogle,* LR 8 Ch. 192, 3 Eng. Rul. Cas. 282; *Re Cox,* LR 9 Ch Div (Eng) 159. It is unlike the income from the investment of a sum of money, as in *In re Cushing's Will,* 58 Vt 393, 5 A 186, cited by the petitioners, where interest accrues from day to day and the precise amount of which may at any time be accurately determined, and is therefore apportionable.

The petitioners excepted to the admission of the will in evidence. Since the county court treated the probate decree as the law of the case the error, if any, was harmless.

*Judgment affirmed. To be certified to the Probate Court.*