## William Feinstein Brothers, Inc. v. L. Z. Hotte Granite Co., Inc.

[184 A.2d 540]

May Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed September 18, 1962

*Finn & Davis* for the plaintiff.

*Monti, Eldredge, Calhoun & Free* for the defendant.

168

**Holden, J.** This controversy has developed from a contract for the purchase and sale of two hundred monuments. The plaintiff buyer is a retail dealer in granite markers. The defendant seller is a manufacturer of these commodities. At the close of all the evidence a verdict on both issues of liability and damages was directed for the plaintiff. This appeal by the defendant challenges this action by the trial court on the ground that the evidence required these questions be submitted to the jury.

On November 1, 1955 the defendant's salesman obtained an order for the purchase of five different types of markers. The order was written on the defendant's form by the salesman. Each type is set up in the order by separate designation, with the unit and total price indicated for each category. At the bottom of the second and final page, the total order is recapitulated by adding the price for each type of marker ordered, with the aggregate sum of $6,395.00.

After the printed word *Terms* there is written "2% 15 30 da net." After the printed word *When* appears the writing "Start shipping Feb 15th to June 15th mixed quantities."

The defendant's home office acknowledged receipt of the order by letter to the plaintiff. The letter advises the buyer that shipments will start on February 15th and continue "until all are shipped as per instructions to June 15/56. The TOTAL Amount of the order is $6,395.00 Less 2% Discount in 15 Days."

On February 16, 1956 the defendant made the first shipment of mixed quantities. Six other shipments followed during the period to April 26, 1956 which accomplished delivery of one hundred twenty-five pieces of the two hundred ordered. An invoice accompanied each delivery specifying the type, and total unit price of each item in the shipment. In response to requests by the defendant, the plaintiff made several payments during this period to the defendant but the amounts of the payments did not correspond to the billings indicated on the invoices. On April 26, the date of the last shipment, the unpaid balance of the amounts charged to the plaintiff according to the invoices was $2,878. This amount was finally satisfied by several payments over the ensuing five months. In the final payment on September 20, 1956 the plaintiff deducted a two percent discount on the aggregate of the shipments.

It appears from the record that the parties had done business over a period of fifteen years. During that time the plaintiff had paid for the various shipments within fifteen days. The order in question was the largest ever received during this time. The parties continued their dealings for some time after deliveries under the present order had been terminated.

Later, this action was brought to recover damages claimed by reason of the defendant's failure to deliver the remaining seventy-five markers specified in the order of November 1, 1955. The defendant pleaded the prior breach of the buyer's obligation to make payments for the shipments as the goods were delivered. Thus the question developed by the pleadings and the evidence was directed to the issue of whether the contract between the parties required payment after each delivery. The plaintiff's motion for a directed verdict was based on the proposition that according to the terms of the contract of sale there was no obligation on the buyer to pay for any of the shipments until full delivery of the two hundred markers had been accomplished.

In sustaining the plaintiff's motion the trial court held the contract could not be construed as providing for instalment deliveries or instalment payments. Consequently it ruled as a matter of law that the contract was an entire one, the plaintiff was not in default and the defendant was not excused from full performance by reason of the plaintiff's failure to pay for each shipment on delivery. In this connection the presiding judge went on to comment that the contract was written by the defendant's agent and if it was the intention to provide for instalment payments and deliveries it would have been easy to have included such a provision in the order.

This observation, by the court below, overlooked the provision of the Uniform Sales Act which prescribes: Unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions, that is to say, the seller must be ready and willing to give possession of the goods to the buyer in exchange for the price and the buyer must be ready and willing to pay the price in exchange for the possession of the goods. 9 V.S.A. §1542.

When a contract of sale is silent as to the time for payment, the buyer's obligation to pay arrives when he receives possession of his purchase. *Kitson* v. *Holden, Admr.,* 74 Vt. 104, 107, 52 Atl.

271; *Hambleton* v. *U. Aja Granite Co.,* 95 Vt. 295, 297, 115 Atl. 102; *Miles* v. *Vermont Fruit Co.,* 98 Vt. 1, 11, 124 Atl. 559.

■ The contract at hand unequivocally affords the seller the privilege of making deliveries of the granite in instalments, for it directs that shipments are to start on February fifteenth and will continue to the following June. Whether the privilege to make delivery by instalments created a corresponding obligation on the buyer to pay for each instalment upon delivery was not stipulated in the writings between the parties. When the terms of the contract do not state whether any payment shall be made before full performance, the governing principle is the manifested intention of the parties in view of the nature of their agreement, their conduct in reference to the undertaking and the usages of the business. 2 Williston, Sales, §466aa (Rev. Ed.); *Barlow Manufacturing Co.* v. *Stone,* 200 Mass. 158, 86 N.E. 306, 307; *Producers' Coal Co.* v. *Hillman,* 243 Pa. 313, 90 Atl. 144, 145.

■ It is of course the general rule that if the essential terms of a contract are expressly stated in clear and definite terms, the interpretation of the writing is for the court. This rule was involved in *Brandon Manufacturing Company* v. *Morse,* 48 Vt. 322, 326, in construing a contract for the sale and delivery of one hundred cords of wood "before March 15, 1872,—for the sum of four dollars and seventy-five cents per cord." The question on appeal was the correctness of the trial court's ruling in excluding parol evidence offered by the seller to explain the meaning of the language of the contract. In sustaining the verdict for the buyer, the Court held that there was no ambiguity about the language used which required explanation by parol evidence and that the law fixed the time for payment after complete delivery had been made.

This case stands differently for several reasons. The order in the Brandon case did not, in so many words, provide for instalment deliveries over an extended period of time. The case was decided long before the enactment of the Uniform Sales Act. And from the buyer's standpoint at least, the trial was conducted on the theory that no parol evidence was needed to explain the terms of the undertaking.

In the present trial both parties adopted the theory that extrinsic evidence was necessary to explain the meaning of the term "2% 15 30 da net," for both parties introduced evidence bearing on this point. On this, the evidence was in sharp conflict.

■ Where the meaning of a writing is uncertain and parol evidence is introduced in aid of its interpretation, the question of its meaning should be left to the jury. *White* v. *Lumiere North American Co., Ltd.*, 79 Vt. 206, 222, 64 Atl. 1121, 6 L.R.A., N.S. 807; *Taplin & Rowell* v. *Marcy*, 81 Vt. 428, 452, 71 Atl. 72; 2 Williston, Contracts, §616 (Rev. Ed.) p. 1772. Thus the function of the jury is invoked wherever, in view of the surrounding circumstances and usages offered in evidence, the meaning of the writing gives rise to doubt as to the true intention of the parties. 2 Williston, *supra,* at p. 1774.

Since the time for payment was not specifically expressed, and the conduct of the parties and their business dealings admitted of conflicting inferences, an issue of fact for the jury was presented. It was error for the trial court to deal with it as a matter of law.

An order, similarly worded, covering multiple shipments with separate invoices, was the source of the controversy in *Auer & Twitchell* v. *Robertson Paper Co.*, 94 Vt. 473, 111 Atl. 570. In that case, as here, the controlling consideration was the understanding and intention of the parties as to whether each shipment was to be paid for separately, prior to complete delivery of the total order. The case was tried by the court and the issue was settled in the findings as a question of fact. *Auer & Twitchell* v. *Robertson Paper Co., supra,* at 476.

■ Until it is established that the buyer's obligation of delivery and the seller's obligation of payment are to be performed by instalments, it is impossible to discover whether the breach claimed on either side is material so as to justify the injured party in refusing to proceed further with the undertaking as provided in 9 V.S.A. §1545. See *Auer & Twitchell* v. *Robertson Paper Co., supra,* 94 Vt. at 479; *Helgar* v. *Warner's Features,* 222 N. Y. 449, 119 N.E. 113, 114. Each of these considerations was essential to the correct adjudication of the rights of the parties to this action. Since the judgment that was entered did not settle these issues, it cannot stand.

■ The defendant asks us to enter a verdict and judgment in its favor in this Court. This we cannot do. At the close of the evidence, both parties moved for directed verdicts. In asserting its motion, the plaintiff did not waive its right to go to the jury if the ruling below had gone against it. The mere fact that both parties request verdicts in their favor does not amount to mutual consent that the case should be entirely withdrawn from the jury. Since it does not affirmatively appear from the record that the litigants agreed that all issues should be decided by the court alone, the plaintiff has an equivalent right to have the issues of fact resolved by the jury's verdict. *Bacon, Receiver v. Barber,* 110 Vt. 280, 289, 6 A.2d 9, 123 A.L.R. 253.

*Judgment reversed and cause remanded.*

**Smith, J.,** dissenting. Missing from the majority opinion is the fact that both parties in the action, at the close of all the evidence, moved for a directed verdict on the grounds that the determination of whether the contract was entire or severable was a matter of law to be decided by the court, and presented no factual question for the jury. This is clearly set forth in their respective motions, and the lower court, in the presence of the jury, the parties and counsel, and before ruling on the motions, stated "we are also inclined to agree with counsel that there is no issue here for the jury." No exception was taken to the statement so made. Indeed, after the direction of the verdict in favor of the plaintiff, the only objection made by the defendant to the direction of the verdict was as to the amount of damages which the court directed the jury to find for the plaintiff.

Our rule is that when both parties move for a verdict the loser does not waive his right to go to the jury. But if it affirmatively appears that neither party wishes to go to the jury, it is for the court to direct such verdict as in its judgment the evidence requires. *Scover, Webster and Reirden v. Lang,* 92 Vt. 501, 104 Atl. 877; *Union Cooperative Store v. Fumagalli,* 107 Vt. 145, 148, 175 Atl. 847. In my view, the record before us affirmatively shows that neither party wished to go to the jury on the question of the interpretation of the contract. Even after the direction of the verdict the defendant's only complaint was on the amount of damages awarded, and not to the court's direction to the jury as to the nature of the contract. To

allow this defendant now to present to another jury the very question which he affirmatively made clear he did not wish the jury in the original trial to consider affords an opportunity for "second guessing" to which I do not believe him entitled under our decisions. In effect, he is allowed to change completely his position stated in the trial below, and upon which the trial court relied in making its ruling, because the ruling was adverse to him.

The majority opinion, however, does not cover the point just presented, which admittedly was not briefed. In that opinion, the remand and new trial were granted on the basis that the case could not be taken from the jury by the court below because the construction of the contract was for the jury on the conflicting inferences in the case presented by the evidence. In considering this aspect of the majority opinion I do not wish to be understood as standing for the proposition that the trial court could not have submitted the case to the jury, even in the face of motions from both sides asking solely for the court's determination of the issue. If, despite the motions, the lower court had believed that there was conflicting evidence upon a material fact, its duty would have been to submit the question for the consideration of the jury, regardless of the motions.

The first question to be considered by the lower court under the motions for directed verdict was the written contract between the parties. If the contract was plain and unambiguous on its face so that it left no room for construction, it should be given effect according to its language. *In re Beach Estate,* 112 Vt. 333, 335, 24 A.2d 340. And this would be so although it is undisputed that both parties gave extrinsic evidence relative to the circumstances occurring after the contract was made in an effort to support their respective views of the contractual terms. For it is only when the meaning of a contract is uncertain that resort may be had to the well settled but subordinate rules of construction. *Davidson* v. *Vaughan,* 114 Vt. 243, 247, 44 A.2d 144; *In re Pirie Estate,* 116 Vt. 159, 164-165, 71 A.2d 245.

As the majority opinion states, the contract between the parties consisted of two writings. The first writing was an order, drawn up by the salesman of the defendant, which provided for the delivery of the granite pieces ordered, by the words, "start shipping Feb. 15th to June 15th mixed quantities." The second writing is the letter from the defendant accepting the order. Because the real question

presented by this case is to the terms and manner of payment provided for by the contract the acceptance letter is of vital importance.

The key phrase in that letter is, "The total amount of the order is $6,395.00. Less 2% in 15 days." To me, as it was to the trial court, the meaning is plain and unambiguous. The total sum of $6,395.00 is subject to the discount offered if paid within fifteen days from whatever time it might be that the entire sum became due and payable. Had the defendant wished to make one of the terms of the contract that payment should be made after each shipment, and that discounts could be taken only if payment was made within a specified term after each shipment this could easily have been stated in the acceptance letter, a part of the contract itself. This the defendant did not do, and so the contract provided for a single payment for the total order, with a two percent discount available to the plaintiff if the total was paid within fifteen days from due date.

I agree with the trial court that the contract between the parties was evident and clear in its meaning and terms and should be given effect according to its unambiguous language. But, even if the acceptance letter of the defendant, above quoted, is not considered as setting forth the terms of payment, the same result must be reached. In the case of *Brandon Manufacturing Co., v. Morse,* 48 Vt. 322, the following factual situation was found to exist:

The defendant agreed to deliver to the plaintiff one hundred cords of wood by March 15, 1872. The price for the wood was four dollars and seventy-five cents a cord. This contract was signed by the defendant on December 8, 1871 and was accepted by the plaintiff who sought to enforce it in this action.

The defense was that several deliveries of this wood had been made by the defendant to the plaintiff, but that although the plaintiff had made some payment of certain sums of money, payment in full had not been made after each delivery so that the plaintiff had not fulfilled its part of the contract. Defendant offered to show by parol testimony that the plaintiff had agreed to make such payments upon each delivery as part of the contract.

In sustaining the verdict for the plaintiff, the Court, through Chief Justice Pierpoint, stated:

"When this contract was accepted it became binding upon both parties, the same as if it had been signed by both. One was

bound to deliver the wood, and the other to pay the stipulated price upon delivery. The time when payment is to be made is not in terms fixed by the contract, but the law fixed it as definitely and with as much certainty as it could be by words. The legal force and effect of the contract, is, that the plaintiff should pay for the wood at the stipulated price, when delivered, on demand. There is no ambiguity about the contract that requires explanation by parol testimony. Parol testimony is no more admissible to vary the clear and settled legal meanings and effect of a contract than it is to vary its terms. It would hardly be claimed under such a contract as this, it would be competent to show by parol that it was agreed when it was made, that payment was not to be made until some time subsequent to the time when the one hundred cords of wood should be delivered. Yet such testimony would be just as admissible as like testimony to show that the wood, or any part of it, was to be paid for before it was delivered.

"This contract is not divisible; it is an entire contract for delivery of one hundred cords of wood; and the fact that the price is fixed by the cord, does not vary it in that respect. This contract is the same as though the price had been fixed at the gross amount of $475. The fact that the plaintiff paid the defendant something upon the contract before the wood was delivered, has no effect to vary the contract. Such payment was entirely voluntary, the plaintiff being under no legal obligation to make it."

Omitting the differences in the subject matter of the contract before us, and that considered by the Court in the Brandon case, the contract before us states the gross price as part of the contract itself, and provides for a discount upon prompt payment not found in the contract for the delivery of cord wood. The principles to be applied are the same.

In support of its order for reversal and new trial, the majority opinion states that the trial judge overlooked a provision of the Uniform Sales Act, 9 V.S.A. §1542, although the provisions of this act are not cited in either of the briefs before us, nor did either party rely upon any provisions of this act in the proceedings below. Of more importance, perhaps, is that the principle stated in 9 V.S.A. §1542, "Unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions." is not here in dispute. The

dispute between the parties here is whether payment was called for by partial delivery or only upon delivery of the entire amount of goods, and upon this question 9 V.S.A. §1542 is silent, although the following section, 9 V.S.A. §1545, makes it clear that it is the contract itself that must govern on the necessity for separate payments for each instalment delivery when such are made under a contract.

In my opinion, the contract before us is clearly not one calling for instalment deliveries which are to be separately paid for.

I would sustain the judgment of the court below.